**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ALTA FUNDAMENTAL ADVISERS LLC,** *et al.*, | |
| Plaintiffs, | Civil Action No. 24-9245 (ZNQ) (JTQ) |
| v. | **OPINION** |
| **PAUL BISARO,** *et al.*, | |
| Defendants. | |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Paul Bisaro, Jason Goodson Sigurdur Olafsson, Bryan M. Reasons, and Daniel Speciale (collectively, "Defendants"). ("Motion", ECF No. 8.) Defendants filed a brief in support. ("Moving Br.", ECF No. 8-1.) Plaintiffs Alta Fundamental Advisors, LLC, Alta Fundamental Advisers Masters LP, Alta Fundamental Advisers LP LLC, Blackwell Partners LLC, and Star V Partners LLC (collectively, "Plaintiffs") filed a brief in opposition, ("Opp'n Br.", ECF No. 16), and Defendants filed a reply, ("Reply", ECF No. 17.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion.

## I.     BACKGROUND AND PROCEDURAL HISTORY

This is a securities fraud case brought under the Securities Exchange Act of 1934, and which arises out of the same facts and circumstances as a class action currently pending before the Court in 23-cv-3662 *Cont'l Gen. Ins. Co. v. Olafsson* ("*Continental General*").  Plaintiff Alta Fundamental Advisors, LLC ("Alta") is an investment management firm which managed the funds of Plaintiffs Alta Fundamental Advisers Masters LP, Alta Fundamental Advisers LP LLC, Blackwell Partners LLC, and Star V Partners LLC (the "Funds").  (Compl. ¶ 25.)  Collectively, the Funds acquired 1,947,093 shares of Defendant Mallinckrodt, PLC ("Mallinckrodt" or "the Company") common stock between June 30, 2022, and May 19, 2023 (the "Period").  (*Id.*)

Defendants are corporate executives of Mallinckrodt, a global pharmaceutical company that develops, manufacturers, markets, and distributes specialty pharmaceutical products and therapies, including opioid products.  (*Id.* ¶¶ 2, 39.)  The individually named Defendants are Paul Bisaro ("Bisaro"), the Chairman of Mallinckrodt's Board of Directors; Jason Goodson ("Goodson"), Executive Vice President and Chief Strategy and Restructuring Officer; Sigurdur Olafsson ("Olafsson"), the Chief Executive Officer, President, and a member of the Company's Board of Directors; Bryan M. Reasons ("Reasons"), Executive Vice President and Chief Financial Officer; and Daniel Speciale ("Speciale"), Global Controller and Chief Investor Relations Officer from 2021 to 2023.  (*Id.* ¶¶ 31, 33, 34, 35, 36.)

### A.     MALLINCKRODT'S BANKRUPTCY

On October 12, 2020, Mallinckrodt filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware, citing to liabilities arising from its sale and marketing of opioid products and the alleged illegal kickbacks and Medicaid rebates involving its Acthar drug.  (*Id.* ¶¶ 40-42.)  Mallinckrodt's June 2022 bankruptcy plan restructured its liabilities and debts whereby Mallinckrodt agreed to pay $1.725 billion over an eight-year period into a trust as part of the

opioid-crisis settlement as well as $260 million over a seven-year period to settle claims for improper billing practices.  (*Id*. ¶ 42.)

Over the next several fiscal quarters, Mallinckrodt continued to experience sales difficulties and liquidity issues.  (*Id*. ¶¶ 101-102, 142.)  In early June 2023, despite reassuring investors that the Company was able to meet its obligations, the Wall Street Journal published an article titled, "Mallinckrodt Explores Repeat Bankruptcy as $200 Million Opioid Payment Comes Due."  (*Id*. ¶¶ 14, 115.)  The article reported that Mallinckrodt was "considering another bankruptcy filing as it faces a $200 million payment part of a $1.7 billion opioid-crisis settlement agreed to last year when the company filed for chapter 11 protection."  (*Id*.)  Consequently, Mallinckrodt's share price fell approximately forty percent to $1.47 per share.  (*Id*. ¶ 117.)

Later that month, partially because of statements made in Mallinckrodt's Form 8-K filed with the Securities and Exchange Commission (the "SEC"), Mallinckrodt' s ordinary share price fell to $0.87 per share. (*Id*. ¶¶ 118, 119.)

On August 25, 2023, the Company announced the "signing of agreements to file a 'prepackaged' bankruptcy." (*Id*. ¶ 125.)  Five days later, Mallinckrodt filed a second petition for Chapter 11 bankruptcy. (*Id*. ¶ 126.)  The prepackaged bankruptcy plan canceled then-existing shares, rendering the 1,947,093 shares held by the Funds worthless.  (*Id*. ¶¶ 25, 126.)

## B.    DEFENDANTS' ALLEGED STATEMENTS AND OMISSIONS

Plaintiffs allege that, throughout the Period in question, they relied on Defendants' "materially false and/or misleading statements, as well as [Defendants'] fail[ure] to disclose material adverse facts about the Company's business, operations, and prospects" and suffered harm.  (*Id*. ¶ 20.)  Specifically, Plaintiff Alta purchased Mallinckrodt common stock for the Funds (1) on twelve separate days between June 30, 2022, and August 4, 2022 (*id*. ¶ 65); (2) on four separate days between August 11, 2022, and November 7, 2022 (*id*.); (3) on eleven separate days

between December 29, 2022, and late February 2023 (*id*. ¶ 80); (4) on April 4, 2023, (*id*. ¶ 98), (5) and on May 19, 2022 (*id*. ¶ 113).

Plaintiffs dedicate much of the Complaint to detailing the specific misleading or materially false statements made by Defendants from June 2022 through May 2023 in official press releases, miscellaneous corporate statements, quarterly calls, proxy statements, conference calls with investors and analysts, quarterly and annual reports filed with the SEC, and through direct communication with Plaintiffs.  (*See id*. ¶¶ 4-20, 51-145, 170.)  According to Plaintiffs, these statements included, among others, assertions portraying that the Company had the financial resources to satisfy its commitments under the bankruptcy plan, the ability to create value for shareholders post-bankruptcy, and the ability to continue operating "as a going concern" due to purported enhancements to its liquidity and balance sheet.  (*Id*. ¶¶ 54, 57, 74).  Plaintiffs also allege that, in many of the public disclosures made by the Company and Defendants "from the time the Company emerged from bankruptcy in June 2022 through and including those relating to the first quarter of 2023," Defendants failed to disclose the Company's "dire state" and that the Company was "unable to meet its obligations."  (*Id*. ¶ 114.)  Plaintiffs allege that "Defendants knew that Mallinckrodt lacked or was at severe risk of lacking the financial resources to make its opioid settlement payments as soon as June 2023" and that Defendants were aware that the "ramifications of failing to make the required payments were [financially] dire."  (*Id*. ¶ 63; *see also id*. ¶¶ 154-157.)  However, it allegedly was not until the press "brought things to a head" that the truth of the Company's financial condition was revealed.  (*See id*. ¶¶ 114-145.)

Defendants' alleged misleading statements, when read together, can be summarized as set forth below.

1.    June 2022 Statements

In June 2022, Mallinckrodt issued a press release discussing its bankruptcy plan and "strengthened balance sheet" following its first bankruptcy. (*Id.* ¶ 53.)  In that release, Olafsson assured investors that "Mallinckrodt is emerging from its recent restructuring process with an attractive pipeline, enhanced financial flexibility and significant opportunities to drive stakeholder value." (*Id.*)  That same release contained a statement by Bisaro noting that "[t]oday marks a new beginning for Mallinckrodt as we emerge well-positioned for long-term success, with a substantially stronger capital structure and major litigation matters permanently resolved." (*Id.*)  These statements, according to Plaintiffs, were false and misleading "because Defendants overstated Mallinckrodt's financial strength." (*Id.* ¶ 54.)

2.    August 2022 Statements

In early August, Defendants issued the Company's second quarter release which contained quotes and representations from Olafsson stating that "[w]hile the Company has faced many challenges, we have a strong foundation and significant potential" and that "Mallinckrodt today benefits from significant liquidity, meaningful cash flows from operations, a solid U.S. commercial platform and competitive positioning in Critical Care and Immunology." (*Id.* ¶ 57.)  In the same release, Reasons noted that after "eliminat[ing] more than $1.3 billion in debt principal and clos[ing] a new $200 million accounts receivable financing facility with the overhang and expense of the opioid litigation now behind us" there is "a clear path forward to continue operating the business in a responsible manner." (*Id.* ¶ 58.)  On that same day in August, Defendants held a second quarter call again discussing the Company's "significant liquidity" and "meaningful case flow." (*Id.* ¶ 59.)  The Company also submitted a Form 10-Q with the SEC, signed by Reasons, affirming its ability to pay the installments under the first bankruptcy plan. (*Id.* ¶ 62.)

3.    October 2022 Statements

In late October of that year, Mallinckrodt, through a press release, announced that it had been approved to re-list on the NYSE American. (*Id*. ¶ 66.) Within that release, Olafsson stated that "Mallinckrodt is well positioned to drive sustainable growth and create long-term shareholder value." (*Id*.) Earlier that month, Mallinckrodt retained Guggenheim Securities, a financial services firm. (*Id*. ¶67.) The Company had previously engaged Guggenheim Securities for services in 2019 and again during the Company's first bankruptcy proceedings from 2020 through June 2022. (*Id*.) Plaintiffs allege that the Company's October 2022 re-retention of Guggenheim Securities "confirms that Defendants knew at that time the Company was at a minimum in need of significant balance sheet management and restructuring." (*Id*. ¶ 69.)

4.    November 2022 Statements

In November, Mallinckrodt issued a press release regarding its third quarter financial results, in which Olafsson discussed the Company's financial progress, strategic initiatives, improvement of its balance sheet, and strengthening of the organization. (*Id*. ¶ 70.) A third quarter call was held during which Olafsson emphasized the Company's "strong future," (*id*. ¶ 74), and Reasons stated that Acthar Gel sales were "consistent with our expectation and underscores our confidence" and, generally, that the Company's net sales were strong, (*id*. ¶ 73).

5.    February 2023 Statements

In February 2023, Mallinckrodt issued a fourth quarter and fiscal year 2022 press release explaining that it "increased cash on hand" and was "well-positioned to stabilize the business in the near term and achieve sustainable growth in the long term." (*Id*. ¶ 81.) That same month, there was a telephone call with investors during which Olafsson and Reasons claimed that Mallinckrodt's end of year liquidity, debt, and performance were indicative of "the meaningful strides . . . made to strengthen" the Company. (*Id*. ¶¶ 82–86.)

6.      March 2023 Statements

In March, Mallinckrodt filed an annual 10-K report with the SEC.  (*Id.* ¶ 89.)  The 10-K provided that Mallinckrodt "could and would make all nine payments over eight years to the Opioid Trusts in a timely manner" and "downplay[ed] the risk of the Company's default under applicable agreements."  (*Id.*)  The 10-K also included several statements regarding the "alleviation" of the "former" or "previous" "substantial doubt about [the Company's] ability to continue as a going concern."  (*Id.* ¶¶ 92-94.)  In addition, the 10-K contained a disclosure regarding "Risks Related to Our Emergence from Bankruptcy." (*Id.* ¶ 96.) However, Mallinckrodt omitted that it was "at immediate risk of defaulting on its debt for filing for bankruptcy a second time." (*Id.*)

7.      May 2023 Statements

In May 2023, Mallinckrodt issued a press release announcing its 2023 first quarter results (*Id.* ¶ 100.)  That same day, Mallinckrodt conducted a first quarter call where Olafsson promoted the Company's "increased cash on hand," (*id.*), and reassured investors that "while we still have work to do, our progress to date reinforces my confidence in Mallinckrodt's ability to drive a long-term value while continuing to deliver for our patients."  (*Id.* ¶ 103).  During this call, Reasons echoed Olafsson's optimism by stating that they were "pleased with the start of the year for the business overall."  (*Id.* ¶ 104.)

Plaintiffs allege that these optimistic statements were contradicted by Goodson's declarations in the subsequent bankruptcy case.  (*Id.* ¶ 109.)  In these declarations, Goodson stated that Mallinckrodt had begun "considering alternatives for consensually extending its payment schedules and addressing its long-term obligations," (*id.* ¶ 108), and that "that the Company 'face[d] an imminent need to restructure' its financial obligations."  (*Id.* ¶ 109.)

## II.  **SUBJECT MATTER JURISDICTION**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

## III.  **LEGAL STANDARD**

### A.    **RULE 12(B)(6)**

A district court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 210 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   The "defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    **RULE 9(B)**

Fraud-based claims brought under the Securities Exchange Act are subject to the heightened pleading requirement of both Rule 9(b) and the Private Securities Litigation Reform

Act, 15 U.S.C. § 78u, *et seq.*, ("PSLRA").  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006).

Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007) (noting that a court may grant a motion to dismiss a fraud-based claim if the plaintiff fails to plead with the required particularity). Particularity requires sufficient details to put the defendant "on notice of the precise misconduct with which [it is] charged." Id. at 201 (alteration in original) (quoting Lum v. Bank of Am., 261 F.3d 217, 223–24 (3d Cir. 2004) (abrogated on other grounds)) (internal quotation marks omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties*, 438 F.3d at 276–77.

The PSLRA, which has an even higher pleading standard than Rule 9(b), is targeted at preventing abusive securities litigation.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law.").  The PSLRA provides two distinct pleading requirements, both of which must be met for a securities complaint to survive a motion to dismiss.  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).  First, under 15 U.S.C. § 78u–4(b)(1), the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Id.* (quoting *Winer Family Tr.*, 503 F.3d at 326) (internal quotation marks omitted).  Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with

9

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)) (internal quotation marks omitted).

Both provisions of the PSLRA require facts to be pled with "particularity." *Id.* at 253. This particularity language echoes the requirements of Rule 9(b). *Id.* Indeed, although the PSLRA replaces Rule 9(b) as the pleading standard governing private securities class actions, Rule 9(b)'s particularity requirement "is comparable to and effectively subsumed by" PSLRA § 78u–4(b)(1). *Id.* (discussing the PSLRA's requirement that a plaintiff plead the "who, what, when, where and how: the first paragraph of any newspaper story") (internal quotation marks omitted).

## IV.   **DISCUSSION**

Defendants make several arguments in support of their Motion. First, they argue that the Complaint should be dismissed in its entirety as to Defendants Goodson and Speciale because the Plaintiffs do not identify any actionable false or misleading statements attributable to them. (Moving Br. at 13.) Second, Defendants contend, as to the remaining Defendants (Bisaro, Olafsson and Reasons), that Plaintiffs' Section 18(a) claim (Count II) must be dismissed because Plaintiffs do not adequately plead their reliance on statements made in SEC filings and the claim is otherwise time-barred. (Moving Br. at 17-20.) Finally, Defendants argue that the state law claims (Counts IV, V and VI) are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Notably, the Motion does not seek dismissal of Count I (Section 10(b)) or Count III (Section 20(a)) as to Defendants Reasons, Olafsson, or Bisaro.

In opposition, Plaintiffs argue that they have adequately pled liability as to Goodson and Speciale (Opp'n Br. at 7-15); their Section 18(a) claim is not time-barred because the statute of limitations is two years and the Complaint does, in fact, rely on statements made in SEC filings

(*id.* at 17); and the state law claims are not preempted by SLUSA because this action is not joined, consolidated, or proceeding as a single action with *Continental General*.

### A.    CLAIMS AS TO GOODSON AND SPECIALE

#### 1.    Section 10(b) and Rule 10b-5 (Count I)

In Count I, Plaintiffs allege a violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 of the corresponding SEC regulations promulgated, 17 C.F.R. § 240.10b-5(a)-(c) ("Rule 10b-5").  (Compl. ¶¶ 171-183.)  Section 10(b) forbids (1) the "use or employ[ment of] . . . any manipulative or deceptive device or contrivance," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of [SEC] rules and regulations." 15 U.S.C. § 78j(b).  SEC Rule 10b-5, in turn, makes it unlawful, in connection with the purchase or sale of any security, to: (a) "employee any device, scheme, or artifice to defraud"; (b) "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; and (c) "engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."  17 C.F.R. § 240.10b-5(a)-(c).  "Claims brought under Rule 10b-5(a) and (c) are referred to as 'scheme liability' claims because they 'make deceptive conduct actionable, as opposed to . . . deceptive statements,' as in Rule 10b-5(b).  *SEC v. Mintz*, 723 F. Supp. 3d 386, 403 (D.N.J. 2024) (quoting *In re DVI, Inc. Sec. Liti.*, 639 F.3d 623, 643 n. 29 (3d Cir. 2011)).  Plaintiffs invoke all three subsections of Rule 10b-5 against Defendants Goodson and Speciale.  (*See* Compl. ¶ 175.)  The Court will address each subsection in turn below.

##### i.    Rule 10b-5(b)

To state a claim under Section 10(b) and Rule 10b-5(b) in a private damages action, a plaintiff must allege: "(1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation."

*McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2014) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)); *see also See Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) ("To state a claim for securities fraud under Rule 10b–5, plaintiffs must "allege defendants made a misstatement or an omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied and plaintiff's [sic] reliance was the proximate cause of their injury.").  And under the PSLRA, a well-pled complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity," 15 U.S.C. § 78u–4(b)(1), and "with respect to each act or omission alleged to violate [Section 10(b)] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(1).  *See Avaya*, 564 F.3d at 252–53.

### a.  Goodson

Defendants move to dismiss Count I as to Goodson, arguing that the Complaint does not contain any allegation that he made a false or misleading statement and therefore does not adequately plead the first element of a Section 10(b) claim.  (Moving Br. at 13.)  Defendants assert that the Complaint only includes a declaration that Goodson filed in connection with Mallinckrodt's 2023 bankruptcy and testimony that Goodson gave during those bankruptcy proceedings, but Plaintiffs do not allege that those statements were false or misleading.  (*Id.* at 14.)  Defendants argue that Plaintiffs instead characterize Goodson's statements as "admissions" of Mallinckrodt's poor financial condition.  (*Id.*)

Generally, information is material if it would be important to a reasonable investor in making investment decisions.  *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000).  An omitted fact is material if there is a substantial likelihood that a reasonable investor would have viewed its

disclosure as "having significantly altered the total mix of information available to that investor." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 280 n.11 (3d Cir. 1992) (internal quotation marks omitted). A duty to disclose an omitted material fact arises only when disclosure would be necessary to make a statement "not misleading" in "light of the circumstances under which they were made." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014) (internal quotation marks omitted). Because materiality is a mixed question of law and fact, it is appropriate for a district court to dismiss allegations of misrepresentations or omissions as a matter of law "[o]nly if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Shapiro*, 964 F.2d at 280 n.11.

The Court finds that Plaintiffs do not sufficiently allege under Rule 9b(b) and the PSLRA that Goodson made material omissions that, if disclosed, would have made a statement "not misleading." The Complaint contains statements from Goodson's bankruptcy declaration regarding the "imminent need" to restructure Mallinckrodt's financial obligations and that Mallinckrodt's financial condition "had caused the Company to begin considering alternatives for consensually extending its payment schedules and addressing its long-term obligations." (Compl. ¶¶ 108,111.) Plaintiffs also allege that Goodson testified at a bankruptcy hearing that he could not (or would not) pin down when this "imminent need" arose but that the need "amplified" around the time of the first quarter earnings call in May 2023. (*Id.* ¶ 109.) Plaintiffs do not allege how these statements are materially false or misleading or how Goodson's statements to the bankruptcy court necessitated his disclosure of some fact. The Complaint contains no further statements attributable to Goodson. Therefore, the first element of Plaintiffs' Section 10(b) claim is not met, and the Court will dismiss that claim against Goodson.

b.  Speciale

Defendants also move to dismiss Count I as to Speciale.  (Moving Br. at 14.)  Plaintiffs allege that on an investor call in August 2022, Speciale stated, "I think one of the comments that we made today was really just [to] try to set an expectation for Acthar for the remainder of 2022 or 2023, maybe in totality and—so we referenced specifically, an approximately $500 million mark for that product this year."  (Compl. ¶133.)  Plaintiffs allege that Mallinckrodt met this expectation, as reported in its February 2023 10-K.  (*Id.*)  Defendants make two arguments in response: first, Defendants assert that, because Mallinckrodt met its expectation as stated by Speciale, the statement cannot be adequately alleged as misleading; and second, Defendants argue that Speciale's statement is forward-looking and thus protected by the PSLRA's safe harbor provision.  (Moving Br. at 14.)

"In addition to establishing a heightened pleading standard, the PSLRA provides a so-called 'safe harbor' that immunizes certain 'forward-looking' statements from § 10(b) liability." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016).  The safe harbor applies to forward-looking statements provided that they are "(1) identified as such, and accompanied by meaningful cautionary statements; or (2) immaterial; or (3) made without actual knowledge that the statement was false or misleading."  *In re Aetna, Inc. Sec. Litig.*, 617 F.2d 272 (3d Cir. 2010).  A forward-looking statement includes "projections of future performance, plans and objectives for future operations, and assumptions underlying statements about future financial, economic or operational performance."  *Id.* (quoting 15 U.S.C. § 78u-5(i)(1)).

Here, the Court agrees with Defendants that Plaintiffs have failed to sufficiently show that the statement attributed to Speciale was false or misleading because Plaintiffs do not allege how a statement regarding expectations later met is misleading.  *See Avaya*, 564 F.3d at 252.

Furthermore, the Court finds that Speciale's statement is a projection of future performance and revenue, which falls within the definition of forward-looking statement under the PLSRA's "safe harbor" provision.

Plaintiffs further argue that, in addition to the one statement alleged to be attributable to Speciale, Speciale is liable for other public statements made on behalf of Mallinckrodt as the "maker" of those statements. The "maker" of a fraudulent statement may be held liable under Section 10(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The maker of a statement is a "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*

Although "a corporate officer may make a statement—for purposes of Section 10(b)–pursuant to his responsibility and authority to act as an agent of the corporation," the Court finds that Plaintiffs do not adequately allege that Speciale "made" certain misrepresentations. *Universal American v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387, 394 (D. Del. 2016). Plaintiffs allege that, "based on information and belief, Speciale played a key role in preparation and dissemination of all disclosures and public statements." (Compl. ¶ 37.) Plaintiffs argue that Speciale, as Mallinckrodt's Global Controller and Chief Investor Relations Officer from 2021 to 2023, "was at the forefront in the preparation and dissemination of all disclosures and public statements during the relevant period" and that Speciale "prepared and disseminated information via press releases, presentations, and SEC filings and financial information, to stockholders, potential investors, and financial analysts, such as Plaintiffs." (Opp'n Br. at 14.)

The Complaint does not contain factual allegations to support that Speciale signed specific documents. Instead, it makes only vague reference to Speciale's participation in the preparation of documents. Given the heightened pleading requirements under the PSLRA, Plaintiffs are

required to show, where an allegation is made on information and belief, all facts supporting that belief with particularity.  15 U.S.C. § 78u–4(b)(1).  Plaintiffs have failed to do so regarding Speciale.  *See In re Cognizant Tech. Sols. Corp. Secs. Litig.*, Civ. No. 16-6509, 2020 WL 3026564, at *15 (D.N.J. June 5, 2020) (collecting cases and finding that the plaintiffs failed to allege that a certain defendant was responsible for statements contained in public filings where the defendant was not quoted in any financial earnings press releases attached to forms 8-K and the plaintiffs failed to allege that the defendant's name or contact information appeared on the press releases or that he was responsible for reviewing or approving the press releases prior to their issuance).

And the allegation that Speciale must be the "maker" of Mallinckrodt's statements, by virtue of his position as a corporate officer, without more, is also insufficient under Rule 9(b) and the PSLRA.  *See, e.g., Universal American,* 176 F. Supp. at 394–95 (finding the operative complaint was sufficient as to three corporate officers where it alleged that specific individual defendants made numerous oral misrepresentations at three specific meetings with the board of directors, signed a merger agreement on behalf of the company, and certified that the representations were correct, but did not find the complaint sufficient as to another corporate officer because it made only vague allegations about his participation in preparing certain documents and presentations); *see also City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023) (finding that a challenged statement "is sufficiently attributed to [the defendant]" given that the amended complaint identified the defendant "by name as the speaker" and contrasting such allegations with those in *Janus* where allegations that a person was "significantly involved" were insufficient); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, Civ. Nos. 05-1151, 05-2367, 2011 WL 344419, at *25 (D.N.J. Aug. 8, 2011) (finding

attribution sufficient where the defendant was a named officer, specific statements were attributed to him, and he signed the SEC filings at issue).

Accordingly, the Court finds that, because Plaintiffs fail to allege that Speciale made a misleading statement and further failed to adequately allege how Speciale had ultimate authority over the alleged misstatements in press releases and public filings, Plaintiffs do not plead a plausible claim under Section 10(b) against Speciale. That claim as to Speciale will therefore also be dismissed.

ii.    Rule 10b-5(a) and (c)

Also pled in Count I, Plaintiffs assert a scheme by Defendants, including Goodson and Speciale, to defraud investors in violation of Rule 10b-5(a) and/or (c) through dissemination of the alleged false and misleading statements. (*See* Compl. ¶ 175.) Plaintiffs allege that the scheme was intended to (i) deceive the investing public, including Plaintiffs; (ii) artificially inflate and maintain the market price of Mallinckrodt's securities; and (iii) cause Plaintiffs to purchase or otherwise acquire securities at artificially inflated prices." (*Id.*).

To state a claim under Rule 10b-5(a) and/or (c), a "plaintiff must allege that defendant (1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [investors], (3) scienter, and (4) reliance." *Trustcash Holdings, Inc. v. Moss,* 668 F.Supp.2d 650, 661–62 (D.N.J. 2009) (quotations omitted). Such a claim is subject to the PSLRA, and thus scienter must be pled with particularity under 15 U.S.C. § 78u–4(b)(2). Moreover, as a fraud-based claim, a plaintiff alleging scheme liability must set forth "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed and what effect the scheme had on the securities at issue." *In re Royal Dutch/Shell Transport Sec. Litig.,* Civ. No. 04–374, 2006 WL 2355402, at *7 (D.N.J. Aug.14, 2006) (quoting *In re Parmalat*

17

*Sec. Litig.,* 414 F. Supp. 2d 428, 432 (S.D.N.Y. 2006)).  As opposed to a claim under Rule 10b-5(b), which relates to deceptive statements, a Rule 10b-5(a) and (c) claim makes deceptive conduct actionable.  *In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 643 (3d Cir. 2011).[1]  The claim "must involve 'sham' or 'inherently deceptive' transactions."  *SEC v. Lucent Techs., Inc.,* 610 F. Supp. 2d 342, 360 (D.N.J. 2009).

Defendants do not address Plaintiffs' scheme liability allegations in their moving brief, instead raising arguments for the first time on reply.  In their Reply, Defendants argue that Plaintiffs' scheme liability claim is premised solely on the allegedly misleading misrepresentations or omissions that form the basis of Plaintiffs' Rule 10b-5(b) claim.  (Reply at 2) ("In sum, the only alleged wrongful act in the Complaint is the making of false or misleading statements—Plaintiffs allege no other purportedly wrongful acts to support an independent 10b-5(a) or 10b-5(c) scheme liability claim.").

Generally speaking, "misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination."  *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022).  Here, Plaintiffs argue that Defendants disseminated false and misleading information to investors.  (Opp'n Br. at 7.)  And although the Court found that Plaintiffs did not adequately plead a Rule 10b-5(b) claim as to Speciale and Goodson in particular, those Defendants can still be liable under 10b-5(a) and (c) if they disseminated false or misleading information with intent to defraud investors, even if they did not make such statement themselves.  *See Lorenzo v. Securities and Exchange Commission*, 139 S. Ct. 1094, 1100-01, 1104 (2019) (holding defendant who directly transmitted false statements to prospective investors could be held liable under scheme liability

---

[1] This case was abrogated on other grounds by the United States Supreme Court in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 465 (2013).

because "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5, . . . even if the disseminator did not 'make' the statements and consequently falls outside subsection (b) of the Rule"); *Rio Tinto plc*, 41 F.4th at 53 ("*Lorenzo* rejected the view that only subsection (b) of Rule 10b-5 can regulate conduct involving false or misleading statements.")).

The Complaint is largely devoid of allegations that Goodson and Speciale themselves disseminated allegedly false and misleading statement made by other Defendants.  Plaintiffs allege that they "believe" that Goodson was "aware" of direct communications between Plaintiffs and Reasons, Bisaro, and Speciale and the "content of Mallinckrodt's messaging in advance of these communications" and "were involved in their preparation." (Compl. ¶ 170.)  However, Goodson's alleged awareness of Mallinckrodt's messaging is insufficient to plead with the necessary particularity that Goodson specifically disseminated false or misleading statements.  Plaintiffs provide no additional information regarding Goodson's specific participation in any alleged dissemination.

While marginally more is pled regarding Speciale, Count I is still deficiently pled against him.  Plaintiffs assert that Speciale was present on a May 9, 2023 call with investors.  (*Id.* ¶ 7.) Plaintiffs allege, however, that it was Olafsson, who was "front and center" on this call.  (*Id.* ¶ 10.) Speciale's presence on this call while Olafsson allegedly misled investors does not demonstrate with particularity that Speciale himself disseminated any information to investors that day, let alone false and misleading information.  Plaintiffs offer somewhat more by alleging that, "[b]ased on information and belief, Speciale played a key role in the preparation and dissemination of all the disclosures and public statements described in the Complaint prior to the Company's second bankruptcy filing in August 2022."  (*Id.* ¶ 37.)  However, Rule 9(b) and the PSLRA require more

from Plaintiffs. Plaintiffs vague reference to Speciale's "key role" is insufficient to meet the heightened pleading standards that this Court is required to apply, especially when he is being accused of a scheme to defraud Plaintiffs based on the alleged false and misleading statements of other people.

For the foregoing reasons, the Court will dismiss the Rule 10b-5(a) and (c) claims against both Goodson and Speciale.

2.      Section 20(a) (Count III)

In Count III, Plaintiffs allege a cause of action under Section 20(a) of the Exchange Act for control person liability. Defendants argue that Plaintiffs fails to allege how Goodson or Speciale exercised control over Mallinckrodt. (Opp'n Br. at 16.) Under Section 20(a), "[o]ne can be liable . . . for controlling a company that committed securities fraud." To state a claim, the plaintiff must show: "(1) an underlying primary violation by a controlled person or entity; (2) that [the defendants] exercised control over the primary violator; and (3) that the [d]efendants, as controlling persons, were in some meaningful sense culpable participants in the fraud." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 642 (D.N.J. 2002).

In other words, "[l]iability under Section 20(a) is predicated upon an independent violation of [the Securities Exchange Act] or the rules or regulations thereunder." *Id.* (quoting *In re Party City Secs. Litig.*, 147 F. Supp. 2d 282, 317 (D.N.J. 2001) (internal quotation marks omitted)). Under Section 20(a), a plaintiff may bring a cause of action against individuals who control a corporation that has violated Section 10(b), 15 U.S.C. § 78t(a), but "liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person." *Avaya*, 564 F.3d at 252.

Because the Court finds, as discussed below, that Plaintiffs adequately allege an underlying violation of Section 18(a) against all Defendants, including Speciale and Goodson, the remaining

issue is whether Plaintiffs sufficiently allege that Speciale and Goodson are "controlling persons" under Section 20(a). ‼The term "control" has been defined as "the possession, direct or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Rochez Bros. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975) (quoting 17 C.F.R. § 240.12(b)–2(f)).  Thus, Plaintiffs must demonstrate that Speciale and Goodson exercised control over the alleged disclosures and filings.

Defendants argue that neither Goodson or Speciale exercised control over Mallinckrodt because neither Goodson nor Speciale "signed any of Mallinckrodt's SEC filings."  (Opp'n Br. at 16.)  Plaintiffs argue that Goodson and Speciale knew or had access to all material information related to Mallinckrodt, "including the material information that was improperly withheld and/or misrepresented to investors."  (Opp'n Br. at 17.)

The Court finds that Plaintiffs do not adequately allege that Speciale and Goodson are controlling persons under Section 20(a).  Here, Goodson and Speciale held positions of leadership within Mallinckrodt. Additionally, Plaintiffs also allege specific examples of the power and control exercised by Speciale and Goodson.  Plaintiffs further allege that Goodson has "executive responsibility for overseeing corporate strategy, business development and business intelligence and is a member of Mallinckrodt's executive committee." (Compl. ¶ 33.)  As to Speciale, Plaintiffs assert that "[u]nder Speciale's leadership, Mallinckrodt's investor relations function worked closely with management to prepare and disseminate information about the Company, such as press releases, presentations, and SEC filings and financial information, to stockholders, potential investors, and financial analysts, such as Plaintiffs."  (*Id.* ¶ 37.)  Nonetheless, although the allegations demonstrate leadership roles within the Company, "[t]he mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm." *In re Digital*

*Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002).  Moreover, general allegations of "access to unspecified insider information" and a "purported ability to prevent the issuance of . . . alleged false reports" may suggest the possibility of control but "do not constitute particular evidence of control," and fail to meet the PSLRA's standard for particularity.  *Id*. (citing  *In re Splash Tech. Holdings, Inc. Sec. Litig.,* Civ. No. 99-109, 2000 WL 1727405, *16 (N.D. Cal. Sept. 29, 2000).  Therefore, the Court will dismiss Plaintiffs' Section 20(a) claim (Count III).

### B.    CLAIMS AGAINST ALL DEFENDANTS

#### 1.    Section 18(a) (Count II)

In Count II, Plaintiffs allege a Section 18(a) claim against all Defendants.  Section 18 creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the Securities and Exchange Commission.  15 U.S.C. § 78r(a).  A claim under Section 18 must be filed within one year after the discovery of the facts constituting the cause of action and within three years after the cause of action accrues.  *Id.*  Relatedly, the Sarbanes Oxley Act ("SOX") provides a two-year statute of limitations and a five-year statute of repose for private rights of action involving claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . of the Securities Exchange Act of 1934." 28 U.S.C. § 1658(b).

Defendants argue that Plaintiffs' Section 18(a) claim does not adequately plead reliance, impermissibly relies on SEC filings, and is otherwise time-barred.  (Moving Br. at 19.)  Plaintiffs argue that SOX extends the statute of limitations for Section 18(a) claims to two years.  (Opp'n Br. at 17.)  The Court will address timeliness first.

Here, Plaintiffs filed their Complaint on September 17, 2024, for purchases of Mallinckrodt common stock that occurred between June 30, 2022 and May 19, 2023.  (Compl. ¶ 113.)  Plaintiffs further allege that Mallinckrodt officially filed for its second bankruptcy on August 28, 2023 (*id*.

¶ 126), although word of its financial need to do so began surfacing in June 2023 when the Wall Street Journal reported that Mallinckrodt was considering a repeat bankruptcy filing, (*id.* ¶115). Defendants argue that Plaintiffs had until August 28, 2024, to file the instant action. (Moving Br. at 20.)  Plaintiffs counter that SOX extends that date an additional year and its Complaint was therefore timely filed on September 17, 2024.

In *Lord Abbet Investment Trust-Lord Abbett Short Duration Income Fund v. Valent Pharmaceuticals International, Inc.* ("*Lord Abbett*"), this Court considered similar arguments as to the limitations period and adopted the Second Circuit's ruling in *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016).  Civ. No. 17-6365, 2018 WL 3637514, at *8 (D.N.J. July 31, 2018).  In that case, this Court found that SOX's expanded limitations provision applied to Section 18 claims.  *Id.*  Prior to *Lord-Abbett*, at least one court in this District held that SOX did not override the Section 18 limitations period because Section 18 does not require fraudulent intent to sustain a claim.  *See In re Able Labs. Sec. Litig.*, 2008 WL 1967509 (D.N.J. Mar. 24. 2008) (SOX inapplicable where fraudulent intent is not required); *see also WM High Yield Fund v. O'Hanlon*, 2005 WL 6788446, *12 (E.D. Pa. May 13, 2005) (SOX does not apply where no proof of fraud is required).  Adopting the Second Circuit's decision in *Dekalb County Pension Fund v. Transocean Ltd*.,, the Court in *Lord Abbett* applied SOX to Section 18 claims because, although Section 18 liability does not require fraudulent intent, it does require something more than negligence, *i.e.*, a Section 18 claim will fail if the person sued demonstrates that "he acted in good faith and had no knowledge that such statement was false or misleading."  The Court therefore found that SOX applies to Section 18 claims and extended the existing limitations period to  two-years.  This Court is persuaded by the reasoning in *Lord Abbett* and therefore finds that the

statute of limitations period for Section 18 claims is two years.  Accordingly, Plaintiffs' Section 18 claims as pled are timely.

Defendants additionally argue that Plaintiffs' Section 18 claims should be dismissed because Plaintiffs fail to plead reliance on false statements made in Mallinckrodt's public filings with the SEC.  (Moving Br. at 17.)  "Section 18 creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC pursuant to the Exchange Act."  *In re Supreme Specialties, Inc. Securities Litigation*, 438 F.3d 256, 283 (3d. Cir 2006) (citing 15 U.S.C. § 78r(a))).  To satisfy the "in reliance upon" component, a complaint must "plead actual reliance on specific statements contained in the SEC filings at issue."  *Id.* at 283–84 ("Section 18 plainly refers to reliance upon any materially false 'statement.'") (quoting 15 U.S.C. § 78r(a)).

Defendants argue that Plaintiffs do not identify which SEC filings influenced which decisions to invest in Mallinckrodt.  (Moving Br. at 18.)  Defendants further argue that Plaintiffs admit that they relied not only on Mallinckrodt's SEC filings but also on "direct communications" and statements during earnings calls.  (*Id.*)  Plaintiffs argue that adequately plead reliance on specific statements contained in Mallinckrodt's SEC filings.  The Court agrees with Plaintiffs.  Plaintiffs allege that they relied on the following statement contained in an August 11, 2022 Form 10-Q; Mallinckrodt "will make [a] payment of $200 million . . . inclusive of interest, related to our . . . opioid related settlement upon the one-year anniversary of the [June 16, 2022] Effective Date."  (Compl. ¶ 61.)  Plaintiffs allege that this statement was false and misleading because Defendants knew that Mallinckrodt was at "severe risk of lacking the financial resources to make its opioid settlement payments as soon as June 2023."  (*Id.* ¶ 62.)  According to Plaintiffs, Alta then purchased common stock for the Funds on August 11, 2022, August 17, 2022, September 16, 2022,

and November 7, 2022.  (*Id.* ¶ 65.)  Plaintiffs further allege that they relied on Mallinckrodt's

November 8, 2022 Form 10-Q which stated that it "will" make its $200 million payment to the

Trusts for the Opioid Settlement by June 16, 2023, when Alta purchased Mallinckrodt common

stock on December 29 and 30, 2022; January 12, 13, 17, 18, and 31, 2023; and February 1, 2, 19,

and 14, 2023.  The Court finds that these allegations are sufficient to show that Plaintiffs relied on

false or misleading statements made in Mallinckrodt's SEC filings.  The Court will therefore deny

Defendants' Motion as to Plaintiffs' Section 18 claim (Count II).

### 2.    State Law Claims (Counts IV, V, VI)

Plaintiffs also assert various state law claims including a violation of the New Jersey

Uniform Securities Act (Count IV), common law fraud (Count V), and negligent misrepresentation

(Count VI).  Defendants argue that these claims are preempted by SLUSA because of the

*Continental General* class action that is also before this Court.[2]  SLUSA provides that plaintiffs

cannot use the class action device to vindicate certain claims that allege a misrepresentation or

deceptive device in connection with a securities trade.  *LaSala v. Bordier et Cie*, 519 F.3d 121,

128 (3d Cir. 2008); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 87

(2006) ("SLUSA does not actually pre-empt any state cause of action.  It simply denies plaintiffs

the right to use the class action device to vindicate certain claims.  The Act does not deny any

individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-

---

[2] SLUSA provides that:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

law cause of action that may exist.").  A "covered class action" for purposes of SLUSA preemption includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii).

Defendants argue that both this action and the class action *Continental General* are pending before this Court and involve similar questions of law and fact.  (Moving Br. at 21.)  Defendants contend that both cases "ask whether Defendants made false or misleading statements to investors regarding Mallinckrodt's financial prospects after Mallinckrodt emerged from the 2020 bankruptcy."  (*Id.*)  Defendants also contend that both actions "together seek damages on behalf of more than 50 persons" and are sufficiently joined, consolidated, or otherwise proceed as a single action for any purpose" to satisfy SLUSA.  (*Id.* at 21-22.)

Plaintiffs dispute whether this is a "covered class action" sufficient to trigger SLUSA preemption.  (Opp'n Br. at 21.)  Plaintiffs argue that the instant action and *Continental General* have never been "joined, consolidated, or otherwise proceed[ed] as a single action for any purpose."  (Opp'n Br. at 22.)  More specifically, Plaintiffs contend that the two actions have not been joined for hearing or trial or consolidated by a formal order of this Court under Federal Rule of Civil Procedure 42(a).  (Opp'n Br. at 22.)

Given that the two suits have proceeded entirely independently since their filings and have not been combined, in whole or in part, for case management or for resolution of at least one common issue,[3] the Court finds that the two suits are not "joined, consolidated, or otherwise

---

[3] The Court notes that the *Continental General* has since settled, although the Court has not yet granted final approval of the settlement.  (*See* Civ. No. 23-3662, ECF No. 47.)

proceed[ing] as a single action for any purpose." *See North Sound Capital LLC v. Merck & Co.,* 938 F.3d 482, 492 (3d Cir. 2019). Thus, the Court will deny Defendants' motion seeking dismissal of the state law claims under SLUSA "preemption."[4]

Defendants separately seek dismissal of the state law claims against Goodson and Speciale on a second ground, arguing that, without the assertion that Goodson and Speciale made false or misleading statements, Counts IV, V, and VI must be dismissed. (Moving Br. at 17.) The Court agrees. The three state law claims (New Jersey Uniform Securities Act, fraud/fraudulent inducement, and negligent misrepresentation) all require proof of a false or incorrect statement. *Lord Abbett Mun. Income Fund, Inc. v. Citigroup Glob. Markets, Inc.*, 2012 WL 13034154, at *8 (D.N.J. July 12, 2012) (New Jersey Uniform Securities Act); *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 38 (D.N.J. 2020) (fraud/fraudulent inducement); *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (negligent misrepresentation). Therefore, the Court will dismiss Counts IV, V, and VI against Goodson and Speciale on this basis.

---

[4] The only basis that Defendants advance for dismissal of the state law claims against Reasons, Olafsson, and Bisaro is preemption, and the Court is under no obligation to raise legal arguments overlooked or ignored by the parties. *Millner v. Bayada Nurses, Inc.*, Civ. No. 5-3164, 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2016) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 441 (1990)).

V.    **CONCLUSION**

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART

Defendants' Motion.  An appropriate Order will follow.


Date: June 30, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
